UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIMMY SIMS JR.,

        Plaintiff,                              Hon. Ellen S. Carmody

v.

                                         Case No. 1:17-cv-902

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social

security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 41 years of age on his alleged disability onset date. (PageID.234). Plaintiff successfully completed high school and worked previously as a tool and die repairer, tool machine/set-up operator, and an inspector. (PageID.75-76). Plaintiff applied for benefits on April 23, 2014, alleging that he had been disabled since December 7, 2011, due to a back injury, right leg arthritis and numbness, diabetes, asthma, depression, high blood pressure, sleep apnea, acid reflux disease, colon polyps, and tendonitis in his hands. (PageID.234-43, 281).

Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.129-232). On August 11, 2016, ALJ James Prothro conducted a hearing with testimony being offered by Plaintiff and a vocational expert. (PageID.84-127). In a written decision dated September 8, 2016, the ALJ determined that Plaintiff was not disabled. (PageID.65-77). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.26-31). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

3

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) low back injury status post L4-5 anterior discectomy and fusion; (2) obesity; (3) mild motor and sensory polyneuropathy of the bilateral lower extremities; (4) patella-femoral spurring; and (5) depression, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.67-70). With respect to Plaintiff's residual

---

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) he can lift and carry ten pounds occasionally and less than ten pounds frequently; (2) during an 8-hour workday, he stand/walk for two hours and sit for six hours; (3) he can only frequently push/pull with his right lower extremity; (4) he requires a cane for balance and walking; (5) he can occasionally climb ramps/stairs, but can never climb ladders, ropes, or scaffolds; (6) he can frequently balance and occasionally stoop, kneel, crouch, and crawl; (7) he must avoid concentrated exposure to extreme cold, heat, humidity, fumes, odors, dusts, gases, and poor ventilation; and (8) he is limited to simple work and no fast paced work. (PageID.70).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert reported that there existed approximately 97,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations

5

notwithstanding. (PageID.121-26). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I.    **Medical Evidence**

The administrative record contained more than 300 pages of medical treatment records. The ALJ discussed at length this evidence, specifically stating:

> The claimant alleges disability resulting from impairments including back injury with back surgery, arthritis and numbness in the right leg that requires the use of a cane, asthma, depression, hypertension and tendinitis of both hands (Exhibit 1E/2). In the Function Report, the claimant reported he could no longer lift heavy objects; he could not sit or stand for more than 15 to 20 minutes without pain. Moreover, he reported because of his medications he was often tired or dizzy (Exhibit 12E/1). The claimant testified he had no relief in his symptoms after surgery. He stated he used a cane for balance, as he had no feeling in his right leg. He testified he had pain levels ranging from five to ten on a ten-point pain scale; as a result, of pain and medications he testified he had to lie down and nap frequently throughout the day.
>
> Regarding the claimant's allegations of disabling impairments, the objective medical evidence reduces the consistency of the claimant's allegations but supports the above residual functional capacity. In terms of the claimant's alleged impairments, the evidence showed the claimant sustained an injury to his back in December 2011 (Exhibit 3F/28). A Magnetic Resonance Imaging (MRI) of the lumbar spine showed moderate focal disc extrusion at the L4-5 level and mild spondylitic changes (Exhibit 3F/13). The claimant was diagnosed with degenerative disc disease of the lumbar spine (Exhibit 4F/49).
>
> Office treatment notes from Mark Moulton, M.D., through February 2013 noted the claimant continued with back pain complaints despite treatment (Exhibit 3F/25-28). He failed conservative treatment with physical therapy, injection therapy and pain medication management (Exhibit 1F/1; 3F/28; 4F/8, 10-15, 42-55).

As a result, in April 2013 the claimant underwent anterior lumbar decompressive discectomy and fusion at L4-L5 (Exhibit 1F/1-8). Postoperative x-rays showed no evidence of complications (Exhibit 1F/9; 3F/12). July 2013 progress notes from Dr. Moulton, noted the claimant reported his back pain had continued to improve and it was about 70 percent better (Exhibit 3F/22).

The claimant had complaints of right sided back pain and numbness down the right lower extremity, but objective diagnostic imaging was less supportive of his allegations (Exhibit 3F/5, 17-20). A November 2013 Magnetic Resonance Imaging of the lumbar spine revealed only a small annular bulge at L4-L5 with no significant canal narrowing and a small disc bulge unchanged at L5-S1 (Exhibit 4F/74; 10F/47). A December 2013 EMG showed a mild motor and sensory polyneuropathy of the bilateral lower extremities (Exhibit 3F/5-9; 9F). A February 2014 bone SPECT study of the lumbar spine showed mildly increased uptake at the site of the bone graft and in the right L4-5 facet joint which corresponded to only mild degenerative facet disease and asymmetrical increased uptake in the right sacroiliac joint, consistent with right-sided sacroiliitis (Exhibit 3F/4). The claimant received a right SI joint injection (Exhibit 3F/29; 4F/60).

In August 2014, the claimant was referred and participated in a physical consultative examination. Thuy Nguyen, D.O., on examination noted the claimant walked with a cane, but did not walk with a limp. He was able to bend forward, squat 10 percent and heel and toe walk without difficulty. Straight leg raise was negative and range of motion of the lumbar spine was within normal limits. Moreover, there was no ligamentous laxity of the knees and no effusions or crepitus of the joints (Exhibit 5F/3).

Subsequent office treatment records from Dr. Moulton covering the period September 2014 through January 2015 showed the claimant continued with reports of pain (Exhibit 11F/7-12). However, x-rays were excellent and showed he was solidly healed (Exhibit 7F/4). The examination was mostly normal as the claimant had some pain with range of motion in the lumbar spine, but straight leg raise was negative, there were no muscle spasms and range of motion was normal in the lower extremities with negative Patrick and Gaenslen signs. Moreover, reflexes and sensory examinations were normal in both lower extremities (Exhibit 7F/2-3). The claimant reported his back pain was manageable with medications (Exhibit 13F/11-16). No significant changes were made to his medications. He underwent facet joint nerve injections on the right at L3, L4 and L5 (Exhibit 6F; 7F/l). Office treatment notes from his primary care physician

noted the claimant was counseled on weight loss with dietary modifications and exercise (Exhibit 8F).

In April 2015, the claimant reported a history of bilateral knee pain (Exhibit 11F/5). An x-ray of the left knee showed only minor patellar spurring. The right knee x-ray was negative (Exhibit 11F/17; 13F/38-39). The examination showed no effusion or swelling, his patella was intact, he had some mild tenderness and crepitus in both knees, but range of motion was good (Exhibit 13F/9). Treatment was conservative with recommended physical therapy (Exhibit I0F/1). In October 2015 the claimant presented to Martin Pallante, M.D., who noted the claimant had positive patellar grind test, however provocative meniscal test was negative and he had full range of motion and no effusion. He had some tightness in the hamstrings and IT band, but he was stable to varus and valgus stress and was stable in the posterolater corners (Exhibit 13F/47). Dr. Pallante indicated the claimant had patellofemoral pain and poor patellar tacking mechanics. He further noted the claimant had gained significant weight along with back issues. Dr. Pallante opined conservative treatment with weight loss, core strengthening, improved flexibility, leg strength and improved gait mechanics was the best solution for the claimant's condition (Exhibit 13F/47).

Subsequent records through December 2015 noted despite recommendations the claimant had failed to attend physical therapy and he was not very interested in therapy (Exhibit 13F/45-47). A MRI of the lumbar spine revealed only mild bilateral neural foraminal stenosis at L5-S1 with otherwise stable degenerative and postoperative findings of the lumbar spine (Exhibit l0F/35; 13F/51). Dr. Pallante again emphasized that even a home program done consistently, if a structured program was not an option, would help his back and knee pain significantly (Exhibit 13F/45). Additional records through April 2016 noted the claimant continued his conservative treatment regimen with medications and L3 and L4 transforaminal injections (Exhibit 13F/4; 14F).

As to the claimant's mental health impairments, the evidence showed a diagnosis of mild major depressive disorder (Exhibit 13F/21). The claimant's treatment had been mostly limited to medications from his primary care physician (Exhibit 8F; 12F/9; 13F/25-26, 28). The evidence showed some minor adjustments in medications over time due to some fluctuating symptoms, but mostly showed the claimant's symptoms were generally controlled, with no difficulty in functioning and at times stable with no medications (Exhibits 13F/23, 28; 12F/9). Moreover, the claimant's mild depressive symptoms did not require treatment from a

> specialist, outpatient counseling, emergency department care or inpatient psychiatric treatment (Exhibits 1F-15F).
>
> Longitudinally, the evidence showed largely normal mental status examinations. The claimant was oriented to time, place, person and situation, he had appropriate mood and affect, normal insight and normal judgment, no suicidal ideation, no agitation and no mood swings, he was not hopeless, forgetful nor did he have any memory loss (Exhibit 8F/12, 34-35, 45; 13F/9, 13, 23, 30).

(PageID.71-73).

## II. Appeals Council Order

Plaintiff appealed the ALJ's decision to the Appeals Council. In support of his appeal, Plaintiff submitted to the Appeals Council additional medical evidence which was not presented to the ALJ. The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. (PageID.26-31, 33-43, 54). Plaintiff argues that he is entitled to relief on the ground that the Appeals Council improperly failed to remand the matter to the ALJ for consideration of this additional medical evidence.

This Court lacks the jurisdiction to review the decision by the Appeals Council not to remand this matter to the ALJ as such is an internal agency matter not within the Court's jurisdiction to review "final decisions" by the Social Security Administration. *See, e.g., White v. Commissioner of Social Security*, 2014 WL 4976754 at *11 (W.D. Mich., Oct. 3, 2014). The Court's authority is limited to assessing whether the Commissioner's *final decision* denying benefits is supported by substantial evidence. *See* 42 U.S.C. § 405(g) (expressly limiting judicial review to "any final decision of the Commissioner of Social Security"); *Bowens v. Barnhart*, 101 Fed. Appx. 93, 94 (6th Cir., June 11, 2004) (the jurisdiction of the federal courts extends only to the review of "final decisions of the Commissioner"). Accordingly, this argument is rejected.

**III.       Sentence Six Remand**

Plaintiff also argues that this Court should remand this matter to the ALJ for consideration of the medical evidence in question. To obtain such relief, Plaintiff must establish that the evidence is new and material, and that good cause existed for not presenting it in the prior proceeding. *Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996). To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *See Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden to make these showings. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006). Plaintiff offers no argument as to why he was unable to timely present this evidence to the ALJ. This alone constitutes a sufficient basis to reject Plaintiff's argument. Nevertheless, even if this shortcoming is overlooked the result is the same as it is not reasonable to argue that consideration of this evidence supports a different result.

The first item of additional evidence is a report authored by Chris Jansen-Yee, Ph.D. on or about July 18, 2017. (PageID.33-43). The doctor reported that Plaintiff's condition "has been severe lately" rendering Plaintiff incapable of performing "less physically demanding work." (PageID.42). The doctor further reported that Plaintiff's "physical limitations and pain make any sustained physical positions, e.g., standing or walking, difficult to manage after short periods of time." (PageID.42). The doctor's report was prepared almost one year after the ALJ's decision and there is no indication therein that the doctor's opinion relates to the time period prior to the ALJ's decision. Moreover, the doctor did not articulate any specific limitations which are inconsistent with the ALJ's RFC determination. While the doctor reported that Plaintiff was incapable of standing or walking for lengthy periods of time, the ALJ limited Plaintiff to sedentary work without prolonged standing or walking.

The second item of evidence is a statement authored by Dr. Mark Moulton on October 21, 2016, more than one month after the ALJ's decision. (PageID.54). The doctor reported that Plaintiff "is clearly disabled" and "is very limited with respect to any type of function that he can do." (PageID.54). First, the doctor's opinion that Plaintiff is disabled is entitled to no weight as such is a matter reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1). Furthermore, the doctor did not identify any specific limitations which are inconsistent with the ALJ's RFC assessment. Moreover, the doctor did not indicate that his opinions or observations concerned the time period prior to the ALJ's decision. Accordingly, the Court cannot consider this additional evidence and there exists no basis to remand this matter for its consideration.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Date: September 26, 2018

 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge